## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 99-0122 (TFH) |
| | ) | |
| DARREL A. GOODWIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Goodwin's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, and for an Evidentiary Hearing, filed on April 26, 2004. The government filed its opposition on October 29, 2004, and Goodwin replied on January 10, 2005.

Goodwin, who is serving a 188-month sentence after pleading guilty to possession of cocaine with intent to distribute, argues that he should be re-sentenced because of ineffective assistance of counsel during the sentencing phase in 2001. Specifically, Goodwin contends that his trial counsel was deficient in (1) not pursuing downward departures based on his traumatic medical history, under U.S.S.G. §§ 5K2.11 and 5H1.4, and (2) failing to demonstrate the factual basis for a "reverse sting" downward departure under U.S.S.G. § 2D1.1. Goodwin argues that, considering these grounds individually and cumulatively, there is a reasonable probability that the Court would have departed downward and sentenced him below 188 months, which was the bottom of the guidelines range. Goodwin seeks an evidentiary hearing to establish these claims, following which the Court would vacate his existing sentence, grant a downward departure, and impose a lower sentence.

1

For the reasons stated below, the Court finds that Goodwin has failed to established a claim for ineffective assistance of counsel. Accordingly, an evidentiary hearing is unnecessary and the Court will deny Goodwin's motion.

## ANALYSIS

Section 2255 allows a defendant to "move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Goodwin contends that his sentence was imposed in violation of the Sixth Amendment because trial counsel was ineffective in failing to seek or prove up various downward departures at sentencing.

### 1. Standard for Ineffective Assistance of Counsel

In resolving a claim for ineffective assistance of counsel, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged," in particular "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland v. Washington*, 466 U.S. 668, 696 (1984). More concretely, under the two-part test established in *Strickland*, a claim for ineffective assistance of counsel must demonstrate (1) that counsel's performance was deficient, and (2) that this deficiency prejudiced the defendant. In disposing of a claim, a court may address either or both prongs in whichever order is most convenient. *Id.* at 697.

To establish deficient performance, "the defendant must show that counsel's

2

representation fell below an objective standard of reasonableness" as measured against

"prevailing professional norms" and "considering all the circumstances." *Id.* at 687-89.

"Judicial scrutiny of counsel's performance must be highly deferential," such that "counsel is

strongly presumed to have rendered adequate assistance." *Id.* at 689. "[T]he defendant must

overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy." *Id.* (quotation omitted). "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts

of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. In particular,

"[t]he reasonableness of counsel's actions may be determined or substantially influenced by the

defendant's own statements or actions," such as "informed strategic choices made by the

defendant" and "information supplied by the defendant." *Id.* at 691.

To establish prejudice, "the defendant must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* "In making this determination, a court hearing an

ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at

695. "Prejudice cannot result from an attorney's failure to pursue a frivolous claim," *United*

*States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001).

## 2. Departure Based on Goodwin's Medical History

Goodwin contends that his counsel should have argued that his traumatic medical history

made him eligible for downward departures under U.S.S.G. §§ 5K2.11 ("lesser harm") and

5H1.4 ("extraordinary physical impairment"). According to Goodwin, he became addicted to

heroin after suffering serious burns in a house fire in December 1986.[1] He asserts that he was

extensively treated with prescription opioids and other painkillers, which contributed to his

addiction.  In the months and years after the fire, Goodwin maintains that he continued to suffer

from excruciating physical pain and post-traumatic stress disorder and, in the absence of

adequate medical care, he self-treated that condition with illegal drugs, including heroin and

cocaine.  Goodwin reports that he continues to experience significant pain.

As Goodwin notes in his petition, the Court was made aware of this background at the

time of sentencing via the Presentence Investigation Report ("PSR") and Goodwin's allocution.

At sentencing, however, Goodwin's trial counsel did not argue that this medical history justified

a downward departure.

### A. U.S.S.G. § 5K2.11 ("Lesser Harm")

Goodwin argues that counsel should have sought a downward departure under § 5K2.11

on the ground that Goodwin was avoiding what he perceived to be the "lesser harm" of relief

from his debilitating physical pain.  In relevant part, § 5K2.11 provides:

> Sometimes, a defendant may commit a crime in order to avoid a perceived greater
> harm.  In such instances, a reduced sentence may be appropriate, provided that the
> circumstances significantly diminish society's interest in punishing the conduct, for
> example, in the case of a mercy killing.  Where the interest in punishment or
> deterrence is not reduced, a reduction in sentence is not warranted.  For example,
> providing defense secrets to a hostile power should receive no lesser punishment
> simply because the defendant believed that the government's policies were
> misdirected.

U.S.S.G. § 5K2.11.

In support of his position, Goodwin cites a First Circuit decision holding that a court may

---

[1]  The Court observes that the PSR erroneously reports this fire as having occurred in
1996.  *See* PSR ¶¶ 67, 73.  This error does not impact the Court's analysis.

consider self-medication via controlled substances as a basis for a "lesser harm" departure. In *United States v. Carvell*, 74 F.3d 8 (1st Cir. 1996), the First Circuit held that the district court had authority to depart downward under § 5K2.11 where the defendant grew and used marijuana after being advised by at least one doctor that it would help treat his depression, which included thoughts of suicide. The First Circuit emphasized that it was the defendant's medical condition that drove the drug dependence, not the other way around. *Id.* at 12. Goodwin argues that, like the defendant in *Carvell*, he self-medicated himself with illegal drugs in response to pre-existing, chronic, debilitating pain.

The Court finds that Goodwin suffered no prejudice from his attorney's failure to pursue a § 5K2.11 departure, because he has not shown a reasonable probability that the Court would have departed downward on this basis had it been argued. This finding is based on the Court's statement at sentencing and the weakness of Goodwin's legal theory.

First, when sentencing Goodwin, the Court was well-aware of Goodwin's position that his drug abuse stemmed from his burn-related pain and remarked that it had to be weighed against Goodwin's prior history of selling drugs. In his allocution, Goodwin told the Court:

> The pain was killing me. I really couldn't afford the medication. I started to using the street drugs trying to take away some of the pain until I could sell some and go get a prescription, and it led me to this case here. I really don't know what to say. As long as I'm clean like I am now, I can think straight, I can go to school, I can function, I can take care of my family, but if something happen and they start giving me medication, it's like a whole different person and my thinking becomes something else. And then, you know, it's not until later on, you know, when you realize what you done got yourself into - - but at the time, it was like I was just helpless. I mean, I was dealing with pain. I was thinking how am I going to get this medication? How am I going to get to this hospital? How am I going to pay for my medication? I don't have no benefits, so - - I should have made some other choice, but at the time I didn't think I had no other choice, so I made the wrong choice and that's what got me here today.

5

Sent. Tr. at 43-44.

Following Goodwin's allocution, the Court's first remark was: "Well, it's unfortunate. I think it's not unknown that people who have terrible burn injuries are in terrible pain and they do sometimes become addicted to drugs as a result of the pain treatment they are given, but you've had a history of these drug sales for some years." Sent. Tr. at 48. The Court thus appreciated and considered Goodwin's suggestion that his pain drove him to drug addiction, but found it had to be balanced against his considerable history of selling drugs.[2] Even though there was no explicit § 5K2.11 argument made on Goodwin's behalf, the Court effectively considered and rejected it.

Second, while *Carvell* offers some legal basis for Goodwin's "lesser harm" theory, it is an outlier in the jurisprudence, distinguishable from Goodwin's situation, and not controlling on this Court. Tellingly, Goodwin identifies no case where a court has actually granted a § 5K2.11 departure on the basis of self-medication; *Carvell* says merely that it would be possible. Moreover, as the government notes, *Carvell* is distinguishable from Goodwin in two important ways: (1) in *Carvell*, the perceived greater harm was suicide, whereas Goodwin's greater harm is merely pain; and (2) in *Carvell*, the defendant was charged with growing marijuana for self-medication, whereas Goodwin was charged with drug trafficking to the public at-large. In sum, while *Carvell* shows that a § 5K2.11 argument may not have been frivolous, Goodwin's "lesser harm" theory is nonetheless outlandish. The Court cannot say that *Carvell* raises a reasonable

---

[2]   Goodwin was sentenced as a career offender. Prior convictions contributing to his criminal history score were possession of heroin with intent to distribute in 1994, assault and battery in 1992, possession of cocaine with intent to distribute in 1992, attempted possession of cocaine in 1990, and attempted possession of cocaine in 1989.

probability that the Court would have granted a § 5K2.11 departure had it been argued.

Because the Court expressed its skepticism of this "lesser harms" theory during the sentencing hearing and legal support for that theory is weak, there is at best a fleeting chance — far from a reasonable probability — that Goodwin could have won relief under § 5K2.11. *Cf. United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1014 (7th Cir. 1987) (stating that establishing prejudice requires showing not just "some conceivable effect," but a reasonable probability). Having found that counsel's failure to seek a § 5K2.11 departure did not prejudice Goodwin, the Court does not address whether that failure constitutes deficient performance.

### B. U.S.S.G. § 5H1.4 ("Extraordinary Physical Impairment")

Goodwin contends that his counsel should have argued that his burn-related physical pain is an "extraordinary physical impairment" warranting a downward departure under § 5H1.4. In relevant part, § 5H1.4 provides:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4.

The Court finds that Goodwin was not prejudiced by counsel's failure to raise this argument, because there is not a reasonable probability that the Court would have departed downward on this basis. Many courts have linked the availability of a § 5H1.4 departure to some demonstration that the defendant's medical condition cannot properly be accommodated or treated in prison. *See, e.g., United States v. Martin*, 363 F.3d 25, 49 (1st Cir. 2004) ("A court may find such an extraordinary impairment when imprisonment would threaten or shorten a

defendant's life or when the Bureau of Prisons would be unable to adequately meet the defendant's medical needs.") (citing *United States v. LeBlanc*, 24 F.3d 340, 348-49 (1st Cir.1994)); *United States v. Johnson*, 318 F.3d 821, 825-26 (8th Cir. 2003) ("[R]ather than being viewed in the abstract, a defendant's physical condition must be assessed in the light of the situation the defendant would encounter while imprisoned."); *United States v. Albarran*, 233 F.3d 972, 979 (7th Cir. 2000) ("The district court when considering a departure based upon a physical impairment must ascertain, through competent medical testimony, that the defendant needs constant medical care, or that the care he does need will not be available to him should he be incarcerated.") (quotation omitted); *United States v. Giovinetti*, 91 F. Supp. 2d 814, 816 (E.D. Pa.) ("If the Bureau of Prisons can adequately provide for a defendant's health care needs, courts have been reluctant to grant departures on the basis of ill health."), *aff'd* 251 F.3d 154 (3rd Cir. 2000). Under that principle, Goodwin was flatly ineligible for relief. He was in fact incarcerated from 1994 to 1997 on a separate conviction and again from February 1999 onward pursuant to the instant offense. Goodwin has not shown that at the time of his sentencing there was information to suggest that the prison system could not handle his medical needs.[3]

As Goodwin notes, however, in the D.C. Circuit the linkage between the defendant's medical needs and the prison system's capacity to accommodate them is not a formal rule of law. In other words, the availability of a § 5H1.4 departure is not conditioned on the inability of the

---

[3] Identifying various instances in which he contends that the prison system *has not* given him appropriate medical treatment, Goodwin argues that there is evidence to suggest that the prison system *cannot* handle his medical needs. *See* Goodwin Reply Br. at 9-10, 12. The instances that Goodwin cites, however, are from May 2002 onward — *after* the sentencing in question. This *ex post facto* information is irrelevant to Goodwin's claim for ineffective assistance of counsel; what matters is information that was available at the time of sentencing.

prison system to provide the defendant with adequate medical care, though that may be a significant consideration. Instead, Goodwin suggests, the Court could grant a § 5H1.4 departure based simply on the plain text of whether Goodwin suffered from an "extraordinary physical impairment" at the time of sentencing.

Under this textual view of § 5H1.4, the Court would have been hard-pressed to conclude that Goodwin's impairment was "extraordinary." While Goodwin may have suffered terrible burns in 1986 and had ongoing medical issues, the PSR shows that he still managed to live an ordinary, functional existence: working full-time as a home repair laborer from 1988 to 1992 and as a car salesman from 1997 to 1998, purchasing a home in 1989, marrying in 1990, fathering three children, spending over three years in jail from 1994 to 1997, completing a degree from the University of the District of Columbia in 1997, engaging in the instant drug offense conduct, and returning to jail from February 1999 to the time of sentencing. These activities are decidedly not the indicia of a "seriously infirm defendant" that § 5H1.4 offers as an example of what might warrant a downward departure.

In sum, the Court finds neither that the prison system was unable to accommodate Goodwin's medical condition nor that Goodwin presented an "extraordinary physical impairment." Accordingly, there is not a reasonable probability that a departure would have been granted under § 5H1.4 had counsel argued for it. Having concluded that Goodwin was not prejudiced by his attorney's failure to pursue a § 5H1.4 departure, the Court does not address whether that failure constitutes deficient performance.

### 3. Downward Departure Based on a "Reverse Sting" under U.S.S.G. § 2D1.1

Goodwin contends that his counsel should have presented better support for his request

for a "reverse sting" downward departure under U.S.S.G. § 2D1.1 Application Note 14.[4] That

provision states:

> If, in a reverse sting, (an operation in which a government agent sells or negotiates
> to sell a controlled substance to a defendant), the court finds that the government
> agent set a price for the controlled substance that was substantially below the market
> value of the controlled substance, thereby leading to the defendant's purchase of a
> significantly greater quantity of the controlled substance than his available resources
> would have allowed him to purchase except for the artificially low price set by the
> government agent, a downward departure may be warranted.

U.S.S.G. § 2D1.1, Application Note 14.

At the sentencing hearing, Goodwin's counsel argued for the "reverse sting" departure

and the government put on DEA agent Kenneth Abrams, who conducted the sting, to testify

about the transaction. As summarized by the D.C. Circuit in its opinion rejecting Goodwin's

appeal, the background for Goodwin's "reverse sting" claim is as follows:

> In early 1999 Darrel Goodwin was arrested by agents from the Drug Enforcement
> Administration ("DEA") who had just sold him cocaine. Although testimony
> suggested that at the time the market price for a single kilogram of cocaine was above
> $27,000, Goodwin had made a deal to buy three kilograms at a unit price of $20,000
> each. On the day of his arrest, Goodwin paid about $20,000 in cash and $1,500
> worth of heroin toward the purchase of the first two kilograms, with the balance to
> be paid on the second kilogram once he had sold the drugs. In addition, Goodwin
> agreed to come back the following day to pay for and collect the third kilogram.

*United States v. Goodwin*, 317 F.3d 293, 295 (D.C. Cir. 2003).

As the D.C. Circuit recounts, the Court "rejected both the claim that the sale was on terms

substantially below market and the claim that any below-market pricing induced a purchase of

higher volume — both of which are necessary for a Note 14 departure." *Id.* at 296. On appeal,

Goodwin's argument was twofold:

---

[4] Under the Guidelines as they existed when Goodwin was sentenced, this provision was
Application Note 15.

> First, he argues that the court erred because the price for the first kilogram of cocaine — about $20,000 rather than upwards of $27,000 — was artificially low and triggered the court's power to depart. Second, he says that the credit terms for the second kilogram were overly generous, because the agents didn't have enough knowledge of Goodwin's ability to profitably distribute large amounts of cocaine, not to mention his reliability; the credit terms were thus the equivalent of lower prices, and therefore permit departure.

*Id.* "Finding no clear error in the [district court's] finding that Goodwin failed to show that the terms were substantially more favorable than in the market generally," the D.C. Circuit rejected Goodwin's appeal. *Id.* at 297.

In his habeas petition, Goodwin essentially seeks to re-litigate the same arguments that were rejected by this Court and on appeal. He now contends that his counsel was ineffective in not proving up his twofold argument by calling an expert witness to testify that (1) the market price for cocaine was $27,000 to $35,000 per kilogram; (2) a reasonable bulk discount for two kilograms of cocaine might have been as low as $24,000 per kilogram; and (3) without a strong prior relationship between buyer and seller, no bulk discount would have been offered for two to three kilograms of cocaine.[5] Goodwin submits that with expert testimony on these three points, he could have demonstrated the factual basis for a "reverse sting" departure. Citing various other facts from the record and case law on this departure, Goodwin further sketches an argument that a reasonable defense counsel would have demonstrated that, in the circumstances presented here, genuine drug sellers would not have fronted him a kilogram of cocaine worth more than $27,000.

The Court does not find that counsel's performance was deficient in this situation. Goodwin does not claim that counsel was ignorant of the departure or failed to argue for it, but

---

[5] To show that such testimony was possible, Goodwin submits an affidavit from a retired police officer attesting to these factual contentions.

11

only that counsel did not present evidence or make arguments in the manner that Goodwin now deems best. The topics on which Goodwin focuses — the market price for cocaine and fronting a kilogram of cocaine — were raised extensively by counsel and Goodwin himself during the sentencing hearing and were rejected by the Court. *See* Sent. Tr. at 3-7, 19-25, 33-34, 46-47. The decision whether to offer an expert witness lay within counsel's discretion on how best to litigate the case. *See United States v. Loscalzo*, 18 F.3d 374, 385 (7th Cir. 1994) ("[T]he decision not to call a witness is a tactical choice that is not subject to review.") (citing *Cartee v. Nix*, 803 F.2d 296, 303 (7th Cir. 1986), cert. denied, 480 U.S. 938 (1987)); *Jones v. United States*, 918 A.2d 389, 409 (D.C. 2007) ("[D]ecisions concerning which witnesses to call at trial are often based on tactical considerations, and therefore, generally remain within the discretion of the defense attorney."); *Lopez v. United States*, 863 A.2d 852, 861-62 (D.C. 2004) ("[T]he decision to call witnesses is a judgment left almost exclusively to counsel.") (citation omitted); *Bell v. United States*, 260 A.2d 690, 691 (D.C. 1970) ("The decision to call or not to call witnesses on behalf of a defendant is part of the strategy utilized by counsel in the preparation of the defense. It is a question of judgment, and this court will not engage in a subjective determination of the wisdom of counsel's strategy.") (internal footnote omitted). Moreover, reasonable counsel could very well have thought that expert testimony that the market price for cocaine was $27,000 to $35,000 per kilogram would have been unnecessarily cumulative, given DEA agent Abrams' testimony that "the price of cocaine at that time was $26,000 to $27,000 per kilo in New York or Miami, and that prices in Washington, D.C. were higher than in New York or Miami." *Goodwin*, 317 F.3d at 394.

This kind of post-hoc criticism of counsel's trial strategy and tactics is precisely what the

Supreme Court cautioned against in *Strickland*: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689; *see also United States v. Ciancaglini*, 945 F.Supp. 813, 817 (E.D.Pa. 1996) ("[T]he mere fact that a tactic has been unsuccessful does not necessarily indicate that it was unreasonable.") (citing *Strickland*, 466 U.S. at 689). Counsel fought the battle to demonstrate a reverse sting. Losing that battle does not perforce mean that counsel's performance was deficient. Goodwin cannot now re-litigate the issue by second-guessing counsel's approach.

Having found that counsel did not perform deficiently in pursuit of a "reverse sting" departure, the Court does not reach the question of whether Goodwin suffered prejudice.

## CONCLUSION

The Court determines that Goodwin suffered no prejudice from counsel's failure to pursue departures under U.S.S.G. §§ 5K2.11 and 5H1.4,[6] and that counsel did not perform deficiently in pursuit of a departure under U.S.S.G. § 2D1.1 Application Note 14. Above all, Goodwin's arguments do not cast into doubt the fundamental fairness of his sentencing. His

---

[6] Goodwin argues that the determination as to a reasonable probability of relief should consider his requested departures not just individually, but also collectively. Beyond the three departures — U.S.S.G. §§ 2D1.1 Application Note 14, 5K2.11, and 5H1.4 — pursuant to which he claims ineffective assistance of counsel, Goodwin also cites U.S.S.G. §§ 4A1.3 and 52K.0 as grounds for departure. Goodwin suggests that under § 4A1.3, the Court could have considered a downward departure on the grounds that his criminal history category significantly over-represents the seriousness of his criminal history or the likelihood of him committing further crimes. He suggests that under § 52K.0 as it existed at the time of his sentencing, the Court could have found that his case was distinguished from the heartland of cases covered by the Guidelines. Even when collectively considering all the various bases for downward departure that Goodwin cites, the Court finds no reasonable probability of relief.

claim of ineffective assistance of counsel therefore fails.  Accordingly, the Court will deny

Goodwin's § 2255 motion.  A corresponding Order accompanies this Memorandum Opinion.


March 23 , 2009

_____
Thomas F. Hogan
United States District Judge

14